UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN MILITO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EXPEDIA INC., et al.,<br><br>Defendants. | CASE NO. 2:25-cv-02507-JHC<br><br>ORDER RE: PLAINTIFF'S MOTION TO REMAND |

**I**

**INTRODUCTION**

This matter comes before the Court on Plaintiff's Motion to Remand.  Dkt. # 10.  The Court has considered the materials filed in support of and in opposition to the motion, the rest of the record, and the governing law.  Being fully advised, for the reasons below, the Court GRANTS the motion.

**II**

**BACKGROUND**

Plaintiff brings this putative class action under the pay transparency provisions of Washington's Equal Pay and Opportunities Act (EPOA), RCW 49.58.110.  Dkt. # 1-2 at 3.  The

ORDER RE: PLAINTIFF'S MOTION TO REMAND - 1

EPOA requires certain employers to disclose in a job posting "the wage scale or salary range" and "a general description of all of the benefits and other compensation to be offered to the hired applicant." RCW 49.58.110(1). Plaintiff alleges that he applied for a job with Defendants and that they did not disclose compensation information pursuant to RCW 49.58.110(1). Dkt. # 1-2 at 5, 10.

Plaintiff filed his complaint in King County Superior Court. Dkt. # 1-2 at 2. Defendants removed the case to federal court, contending that this Court has jurisdiction under 28 U.S.C. § 1332(d), the Class Action Fairness Act of 2005 (CAFA), and 28 U.S.C. § 1441. Dkt # 1 at 2, 16. Defendants also say that this Court has subject-matter jurisdiction because Plaintiff has Article III standing as a bona fide applicant. Dkt. # 1 at 14-15. Plaintiff now requests remand, saying he does not have Article III standing and that CAFA does not apply. Dkt. # 10 at 18.

### III

#### DISCUSSION

A.    Legal Standards

"The burden of establishing removal jurisdiction, even in CAFA cases, lies with the defendant seeking removal." *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011) (citing *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 686 (9th Cir.2006)); *Love v. Villacana*, 73 F.4th 751, 755 (9th Cir. 2023) ("a removing defendant must allege facts in the notice of removal supporting the existence of subject-matter jurisdiction and Article III standing."). "A remand motion challenging removal jurisdiction is evaluated the same as a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction." *DeFiore v. SOC LLC*, 85 F.4th 546, 552 (9th Cir. 2023); *see Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)"). Ordinarily,

ORDER RE: PLAINTIFF'S MOTION TO REMAND - 2

there is a presumption against removal to federal court, but "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).[1]

B.      Analysis

        1.      Standing

        Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies."  U.S. Const., Art. III, § 2; *see Warth v. Seldin*, 422 U.S. 490, 498 (1975) (Article III standing "is the threshold question in every federal case, determine the power of the court to entertain the suit").  To establish Article III standing, the party seeking removal "must show (i) that [they] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)); *Smelt v. Cty. of Orange*, 447 F.3d 673, 682 (9th Cir. 2006).

        Only the first element is at issue; specifically, whether Plaintiff's injury is concrete.  Dkt. # 16 at 9 n.2; *see generally* Dkt. ## 10, 20.  Plaintiff says there is no injury-in-fact to establish Article III standing.  Dkt. # 10 at 5-8 (citing *Atkinson v. Aaron's LLC*, 733 F. Supp. 3d 1056 (2024) and *Vera Whole Health*, 2024 WL 3276578 (W.D. Wash. July 2, 2024)).  Defendants respond that Plaintiff is a bona fide applicant and has suffered an intangible injury that the EPOA was intended to guard against.  Dkt. # 16 at 9.

_____

[1] Defendants ask the Court to determine whether Plaintiff is making a facial or factual challenge to the allegations made in the Notice of Removal.  Dkt. # 16 at 8.  Such a finding would affect Defendants' burden.  *See DeFiore*, 85 F.4th at 552.  But even drawing all reasonable inferences in Defendants' favor, for the reasons below, they still do not meet their burden to establish Article III standing.  Thus, the Court need not decide the issue.  Defendants concede that Plaintiff makes a factual allegation as to the CAFA determination, and thus Defendants must provide competent proof establishing by a preponderance of the evidence that CAFA applies.  *See* Dkt. # 16 at 2-3.

ORDER RE: PLAINTIFF'S MOTION TO REMAND - 3

"Article III standing requires a concrete injury even in the context of a statutory violation," but the injury need not be tangible. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340-341 (2016), as revised (May 24, 2016). "Statutes may elevate intangible harms to the status of a concrete injury if the statutory violation presents a 'risk of real harm' or 'has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts[.]'" *Floyd v. Photon Infotech Inc.*, 2025 WL 3442736, at *3 (W.D. Wash. Dec. 1, 2025) (quoting *Spokeo*, 578 U.S. at 340-341). The Ninth Circuit has developed a two-part inquiry "[t]o determine whether the violation of a statute constitutes a concrete harm." *Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 679 (9th Cir. 2021), *abrogated on other grounds by*, *TransUnion*, 594 U.S. 413. The Court "first consider[s] 'whether the statutory provisions at issue were established to protect . . . concrete interests (as opposed to purely procedural rights).' If so, we then assess 'whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests.'" *Id.* (quoting *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113 (9th Cir. 2017)).

As courts in this District have repeatedly concluded, the EPOA's pay disclosure requirement, although a procedural right on its own, protects concrete, non-procedural rights for job applications and employees. *See Floyd*, 2025 WL 3442736, at *3; *Hill v. ACV Auctions Inc.*, 2025 WL 1582249, at *3 (W.D. Wash. June 4, 2025); *Partridge v. Heartland Express Inc. of Iowa*, 2024 WL 4164245, at *3 (W.D. Wash. Sept. 12, 2024); *Vera Whole Health, Inc.*, 2024 WL 3276578, at *3; *but see Aaron's*, 733 F. Supp. 3d at 1070 (finding the disclosure requirement protected only a procedural right). "By arming job applicants with wage and salary information early in the application process, the EPOA's disclosure requirement protects applicants' interest in negotiating fair pay and 'avoid[ing] wast[ed] time interviewing for positions whose pay would

never be adequate.'" *Floyd*, 2025 WL 3442736, at *3. The Court agrees that the EPOA's disclosure requirement protects a concrete, non-procedural right.

The question here then is whether the specific procedural violations "presented a 'material risk of harm' to [Plaintiff's] 'interest' in the statutorily guaranteed information." *Magadia*, 999 F.3d at 679. "Even when a statute 'has accorded procedural rights to protect a concrete interest, a plaintiff'—or as here, defendant—"may fail to demonstrate concrete injury where violation of the procedure at issue presents no material risk of harm to that underlying interest.'" *Id.* (quoting *Strubel v. Comenity Bank*, 842 F.3d 181, 190 (2d Cir. 2016)).

Defendants say that because Plaintiff was a bona fide applicant, he has standing.[2] Dkt. # 16 at 10. To be sure, "numerous courts in this district have held, unless the plaintiff was [a] 'bona fide applicant' for employment, an EPOA violation involving 'a job posting with no compensation information included' does not 'by itself . . . manifest concrete injury[.]" *Floyd*, 2025 WL 3442736, at *3. Still, being a bona fide applicant is not dispositive. *See Milito v. Wizards of the Coast LLC*, 2025 WL 3754049, at *4 (W.D. Wash. Dec. 29, 2025) ("Plaintiffs must allege, *at minimum*, that they applied for the job with good-faith intent, *and* became personally exposed to the risk of harm caused by the violation") (emphasis added)). Whether Plaintiff was a bona fide applicant does not fully speak to the core question of whether the specific procedural violation alleged caused Plaintiff actual harm or material risk of harm to the concrete right that the EPOA seeks to protect. *See Magadia*, 999 F.3d at 679; *see also Partridge*, 2024 WL 4164245, at *3 ("Plaintiff must allege that the lack of salary information caused or put

---

[2] The Court assumes the truth of this allegation for the sake of this motion but makes no finding on Plaintiff's status as a bona fide applicant. Defendants allege Plaintiff is a bona fide applicant because of his previous applications to Expedia and his relevant experience. Dkt. # 1 at 14-15; *see Travelers United, Inc. v. Hyatt Hotels Corp.*, 761 F. Supp. 3d 97, 111 (D.D.C. 2025) ("A defendant removing a case to federal court under CAFA may also supplement the plaintiff's allegations in its notice of removal, and the court must consider those allegations in its jurisdictional analysis.") (citing *Dart Cherokee*, 574 U.S. at 87-88 *and* 28 U.S.C. § 1446(a)).

ORDER RE: PLAINTIFF'S MOTION TO REMAND - 5

him at risk of concrete and particularized harm contemplated by the EPOA. . . . But time lost in merely submitting an application is 'not an injury that the EPOA seeks to prevent or redress.'") (citing *Magadia*, 999 F.3d at 679).  Defendants argue that "the EPOA protects the concrete interests of real jobseekers—their time, their ability to negotiate pay, and their ability to make informed decisions about employment opportunities."[3]  Dkt. # 16 at 9.  But the cases Defendants rely on do not support such an understanding nor a finding that a plaintiff's status as a bona fide applicant suffices by itself to establish Article III standing.

Indeed, several cases in this jurisdiction, including some that Defendants rely on, indicate that an interview or other step in the application process is required.  *See Floyd*, 2025 WL 3442736, at *4 (Defendant "never offered him an interview, much less a job, so [plaintiff] was never in a position to negotiate pay or participate in futile interviews.  Courts have found identical allegations in other complaints insufficient to establish standing."); *Hill v. Airgas USA LLC*, 2025 WL 3640901, at *4 (W.D. Wash. Dec. 16, 2025) ("Here, [plaintiff] applied for a job but did not interview for it, engage in salary negotiations, or otherwise experience concrete harm. . . . That is not enough to establish standing under Article III."); *Partridge*, 2024 WL 4164245, at *4 (stating that when a plaintiff "does not allege that he was offered employment or an interview," he "does not suggest that the deprivation of information compromised his bargaining power in pay negotiations, placed him at a disadvantage relative to other applicants, or resulted

---

[3] Defendants mischaracterize *Floyd* in paraphrasing it.  *Floyd* does not make such generalized findings.  Instead, *Floyd* finds that "the EPOA's disclosure requirement protects applicants' interest in negotiating fair pay and 'avoid[ing] wast[ed] time interviewing for positions whose pay would never be adequate.'"  *Floyd*, 2025 WL 3442736, at *3.  Other cases, considering the legislative history, have found the same.  *See Vera Whole Health*, 2024 WL 3276578, at *3; *Partridge*, 2024 WL 4164245, at *3.  Also, Defendants' reliance on an early single-paragraph order in *Branson v. Wash. Fine Wine & Spirits*, No. 2:24-cv-00589-JHC (W.D. Wash)—in which the *Magadia* analysis was not briefed—provides no guidance or support for that understanding of the concrete interest either.  *See* Dkt. # 16 at 10-11.  Defendants' reading expands the concrete interest the EPOA seeks to protect, and they have pointed to no authority that would allow this Court to accept that understanding.

ORDER RE: PLAINTIFF'S MOTION TO REMAND - 6

in him having to exit a lengthy interview process after learning the pay was insufficient for his needs.").

Rather than relying exclusively on the bona fide applicant allegation to establish Article III standing, the Court considers the harm alleged to apply *Magadia*'s second step—comparing the concrete interest the statute seeks to protect with the risk of harm Plaintiff (and now Defendants) allege occurred. Plaintiff alleges he "lost valuable time applying" to the position. Dkt. # 1-2 at 7. He also alleges he "remains unable to evaluate the pay for the position and compare that pay to other available positions in the marketplace, which negatively impacts Plaintiff's current and lifetime wages," and "[a]s a result of Defendants' refusal to disclose the pay range in the job posting, Plaintiff's ability to negotiate pay remains adversely affected." *Id*. Defendants do not allege further harm in their Notice of Removal. Dkt. # 1 at 13-14; *see generally* Dkt. ## 1, 16.

As Defendants point out, the legislature intended for early disclosure—preferably before an applicant even applies—but that is the procedural right, not the concrete interest the EPOA protects. Dkt. # 16 at 11 (citing S.B. 5761 Senate Bill Report at 3, 67th Leg., Reg. Sess. (Wash. 2022)). The "legislative history confirms that the EPOA's procedural requirement of disclosure was established to protect applicants by arming them with sufficient information *to ensure fair and equitable pay negotiations*, and *to avoid wasting time interviewing for positions* whose pay would never be adequate." *Vera Whole Health*, 2024 WL 3276578, at *3 (emphasis added); *see also* RCW 49.58.005(2) (the statute's general aim is "to address income disparities, employer discrimination, and retaliation practices, and to reflect the equal status of all workers in Washington state"). "The Legislature amended the EPOA to increase transparency by requiring proactive disclosure of wage and salary information to 'allow[ ] a discussion at the start of the process instead of after an offer has been made, which will increase the ability to negotiate pay.'"

ORDER RE: PLAINTIFF'S MOTION TO REMAND - 7

*Id.* (quoting H.B. Rep. ESSB 5761, at 2); *see also* Dkt. # 1-2 at 7 ("As noted by the Legislature, "'[m]any candidates spend hours going through rounds of interviews only to find out they can't live on the offered pay.'") (quoting Engrossed Substitute S.B. 5761 Senate Bill Report, 67th Leg., Reg. Sess. (Wash. 2022)).  This necessarily requires an interview offer, which might substantially waste a plaintiff's time, or some other form of action on the employer's behalf indicating that a "discussion" has started and pay negotiations may become necessary.

The distinction between a technical violation of the procedural right versus a violation of the procedural right that causes harm or risk of harm to the concrete interest the EPOA seeks to protect is on display in another case in which Plaintiff brings a similar claim against a different defendant.  In *Milito v. Lucid Group USA Inc.*, 2025 WL 3640898, at *2 (W.D. Wash. Dec. 16, 2025), just as here, "Mr. Milito asserts that the withheld pay scale and wage range information, caused him to 'los[e] valuable time,' affected his 'ability to negotiate,' and left him 'unable to evaluate the pay and benefits for the position and compare it to other available positions in the marketplace.'" [4]  The court determined that "these allegations do not demonstrate that Mr. Milito suffered any actual injuries that the EPOA was intended to prevent, such as unfair pay negotiations or wasting time in interviews." *Id*.  Here, unlike in Plaintiff's prior action, Defendants allege he was qualified and had previously applied, and therefore, infer he applied in good faith.  But even if true, that still does not "demonstrate that Mr. Milito suffered any actual injuries that the EPOA was intended to prevent, such as unfair pay negotiations or wasting time in interviews." *See id.*

_____

[4] Plaintiff has also brought suit under the EPOA in *Milito v. Snap Inc.*, 2025 WL 1587284 (W.D. Wash. June 5, 2025); *Milito v. Infosys Ltd.*, 2025 WL 3677484 (W.D. Wash. Dec. 18, 2025); *Milito v. Tencent Am. LLC*, 2025 WL 3653714 (W.D. Wash. Dec. 17, 2025); *Milito v. Aquent LLC*, 2025 WL 3657372 (W.D. Wash. Dec. 17, 2025); *Milito v. Wizards of the Coast LLC*, 2025 WL.  All have been remanded for lack of Article III standing.

Beyond the legislative rationale, another reason for needing to show a harm or risk of harm to a concrete interest is clear. As the Washington State Supreme Court asked rhetorically, "[I]t is unclear what it means to be a 'good faith' or 'bona fide' job applicant. Does it require that a person have all of the qualifications and preferences listed in the job posting? Must the applicant prove they would have accepted the job if given an offer from the employer?" *Branson v. Washington Fine Wine & Spirits, LLC*, 5 Wash. 3d 289, 304 (2025).[5]

It is undisputed that Plaintiff did not interview or engage in salary negotiations. Dkt. # 10 at 8; Dkt. # 20 at 4; *see generally* Dkt. ## 1, 16. Plaintiff's conclusory statements alleging lost time and hindered pay negotiations do not suffice to show there was harm or the risk of harm to his concrete interest in ensuring fair and equitable pay negotiations and to avoid wasting time in a long interview process.[6] *See Partridge*, 2024 WL 4164245, at *4 ("A generalized assertion of time lost, therefore, does not support Article III standing."); *contrast Vera Whole Health, Inc.*, 2024 WL 3276578, at *3 (allegations of "'lost valuable time'" and an inability "to 'evaluate the pay for the position, negotiate that pay, and compare that pay to other available positions in the marketplace'" where there was no interview, pay negotiations, or a qualified plaintiff "fail to show any actual harm against which the EPOA intends to protect"), *with Moquete v. GNC Holdings, LLC*, 2024 WL 4553690, at *2 (W.D. Wash. Oct. 23, 2024) (finding Article III standing when the plaintiff "applied for and obtained a position"). Plaintiff does not satisfy Article III standing and the Court does not have subject matter jurisdiction.

---

[5] The Washington Supreme Court answered the question of who may bring suit under RCW 49.58.110(1), but it did not address standing; or more specifically, Article III standing, as this Court must do. *See Branson*, 5 Wash. 3d at 304 n.7 ("We decline to address the standing argument").

[6] To the extent that the complaint implies that the failure to disclose might harm Plaintiff in future, unrelated, and unnamed job salary negotiations, this also fails to satisfy Article III standing because an injury must also be "'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S., at 560). Without more, stating "Plaintiff's ability to negotiate pay remains adversely affected" fails to allege an actual injury. Dkt. # 1-2 at 7.

ORDER RE: PLAINTIFF'S MOTION TO REMAND - 9

2.    CAFA

"CAFA gives federal courts jurisdiction over certain class actions, defined in [28 U.S.C.] § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee*, 574 U.S. at 84-85 (citing 28 U.S.C. § 1332(d)(2), (5)(B)).

Defendants allege that the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million. Dkt. # 1 at 5-8. Plaintiff contests this and, in the alternative, says that a mandatory and discretionary exception applies. *See* Dkt. # 10 at 12-17. Because Defendants have not met their burden to establish Article III standing, the Court need not determine whether CAFA applies. *See Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016) ("The rule that a removed case in which the plaintiff lacks Article III standing must be remanded to state court under § 1447(c) applies as well to a case removed pursuant to CAFA as to any other type of removed case").

3.    Remand

When a defendant removes a case to federal court, but the plaintiff lacks Article III standing, the district court must remand the case to state court. *Polo*, 833 F.3d at 1196 (considering a CAFA action); see 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). The Court lacks subject matter jurisdiction. Although Defendants request jurisdictional discovery on Plaintiff's status as a bona fide applicant, as addressed above, it would not change the conclusion. The matter must be remanded to state court. *See Hill v. Airgas USA LLC*, 2025 WL 3640901, at *3 (remanding for lack of subject matter jurisdiction); *Hill v. Les Schwab Tire Ctrs. of Wash. LLC*, 2025 WL 3062646, at *5 (W.D. Wash. Oct. 31, 2025) (same); *Hill v. ACV*

*Auctions Inc.*, MJP, 2025 WL 1582249, at *3 (same); *Eggleston v. Bruckner Truck Sales Inc.*, 2025 WL 3153503, at *3 (W.D. Wash. Nov. 12, 2025) (same).

## IV
### CONCLUSION

The Court GRANTS the motion and REMANDS this case to King County Superior Court. The Court STRIKES as moot the motion to compel arbitration at Dkt. # 5.

Dated this 3rd day of April, 2026.

John H. Chun
United States District Judge

ORDER RE: PLAINTIFF'S MOTION TO REMAND - 11